IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

ANDY SCOTT KINCAID,                )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          CIVIL ACTION NO. 1:12-07673
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security,  )
                                   )
          Defendant.               )

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.

By Standing Order entered November 29, 2012 (Document No. 5.), this case was referred to the

undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit

Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. §

636(b)(1)(B). Neither party has filed briefs in the matter.

The Plaintiff, Andy Scott Kincaid, (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on July 1, 2009 (protective filing date), alleging disability as of April 23, 2009, due

to "disc problems in lower back, knee pain, [and] high blood pressure." (Tr. at 17, 125-26, 127-30,

140, 145.) The claims were denied initially and upon reconsideration. (Tr. at 53-56, 57-59, 69-71, 72-

74.) On February 17, 2010, Claimant requested a hearing before an Administrative Law Judge (ALJ).

(Tr. at 75-76.) The hearing was held on May 5, 2011, before the Honorable William B. Russell. (Tr.

at 28-52.)  By decision dated June 24, 2011, the ALJ determined that Claimant was not entitled to

benefits. (Tr. at 17-27.) The ALJ's decision became the final decision of the Commissioner on

September 13, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on November 13, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant,

considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since April 23, 2009, the alleged onset date. (Tr. at 19, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease; degenerative joint disease of the knees; left shoulder impingement, status post arthroscopy; rotator cuff tear on the right, status post arthroscopy; hypertension; and carpal tunnel syndrome on the right," which were severe impairments. (Tr. at 19, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform sedentary level work as follows:

The [C]laimant would be able to lift and carry 10 pounds maximally and 5 pounds frequently; stand/walk for 2 hours in an 8-hour period; and sit for 6 hours in an 8-hour period. He would need to avoid climbing of ladders, ropes, or scaffolds, and exposure to heights, hazards, and dangerous machinery. He would need to avoid operation of a motor vehicle in the performance of work activity. He would need to avoid crawling and climbing, but would be able to ascend or descend a flight of stairs [for] entering or exiting the place of employment. He would be able to occasionally bend, stoop, kneel, or crouch and more frequently reach. He would require breaks of 10 to 15 minutes at approximately 2-hour intervals. He would miss 12 to 17 days a year.

(Tr. at 20, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 26, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a pharmaceutical packager, addresser clerk, and printed circuit board assembly, touch-up screener, at the sedentary level of exertion. (Tr. at 26-27, Finding No. 10.) On this basis, benefits were denied. (Tr.

at 27, Finding No. 11.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on December 15, 1969, and was 41 years old at the time of the administrative hearing, May 5, 2011. (Tr. at 26, 31, 125, 127.) Claimant had a tenth grade, or limited education and was able to communicate in English. (Tr. at 26, 31, 37, 144, 150.) In the past, he worked as an auto mechanic and stock clerk. (Tr. at 26, 36-37, 46, 145-47, 153-64.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

**_Ravenswood Medical Professional Group_**:

The record reflects Claimant's treatment at the Ravenswood Medical Professional Group from September 14, 1991, through June 27, 2006. (Tr. at 235-72.) During this time, Claimant reported back pain. (Id.) An MRI of the lumbar spine on October 25, 2005, revealed a moderate protrusion at L5-S1 with mild compression on the dural sac and mild protrusion at L4-5. (Tr. at 265.) Early degenerative changes were noted. (Id.) An MRI of the lumbar spine on March 5, 2007, revealed degenerative disc disease with disc space decrease between L4 and S1, and central disc protrusion at L4-5 without significant stenosis. (Tr. at 277.)

**_New River Health Association, Inc_**.:

Claimant initially was seen at New River Health Association on May 6, 2008, by Dr. Joan Worthington, D.O., for hypertension by history. (Tr. at 293.) His blood pressure was 132/80 and Dr. Worthington advised she would recheck before administering any medication. (Id.) On June 10, 2008, Claimant reported bilateral knee pain with popping and cracking. (Tr. at 291.) X-rays of Claimant's knees on June 10, 2008, revealed minimal medial joint space narrowing. (Tr. at 292.) Dr. Worthington assessed knee pain and prescribed Lodine 400 for the knee pain and arthritic condition. (Tr. at 291.) Claimant reported on August 25, 2008, that his knees were better (Tr. at 290.), and reported low back pain for one day on September 23, 2008. (Tr. at 289.) He indicated that he was lifting a 180 pound tire off the ground, twisted and turned to the right, and had onset of low back pain. (Id.) Exam revealed positive straight leg raising testing on the right and an inability to toe or heel walk. (Id.) Dr. Worthington assessed acute lumbosacral strain with a history of two herniated discs and prescribed Ibuprofen 800mg and Flexeril 10mg, as well as a Toradol Injection 60mg. (Id.) Claimant reported continued back and knee pain through March 30, 2009. (Tr. at 284-88.)

On June 29, 2009, Claimant complained of back and left shoulder pain for which he requested a cortisone shot. (Tr. at 302.) On exam, he had tenderness on palpation, decreased flexion of the

lumbar spine, and decreased lumbosacral spine rotation. (Id.) Dr. Worthington assessed lumbago. (Id.) He had another Toradol injection in his left shoulder on September 14, 2009. (Tr. at 301.) On October 15, 2009, Claimant reported continued left shoulder pain. (Tr. at 298.) He indicated that he lacked medical insurance and that his health care providers at Bluestone Health Center did not want to deal with him. (Id.) He said that his continued stiffness and left shoulder pain interfered with his ability to work part-time as an auto mechanic. (Id.) On November 2, 2009, Claimant reported that his back locked up and became stiff during physical activity. (Tr. at 297.)

      ***Bluestone Health Center***:

      On June 10, 2009, Claimant was seen by Dr. Hamza Rana, M.D., with complaints of lower back pain and pain in the bilateral shoulders. (Tr. at 295.) He requested something for the pain. (Id.) Dr. Rana noted on exam that Claimant had decreased flexion and extension of the lumbosacral spine secondary to the pain, with full motor strength. (Id.) He assessed a history of arthritis and prescribed Anaprox 500mg. (Id.) On August 25, 2009, Dr. Mark Clarkson, D.O., noted Claimant's reports of intermittent dizziness and feelings of tiredness. (Tr. at 305.) Dr. Clarkson assessed vertigo/dizziness and suggested that Claimant try an over-the-counter product such as Claritin; hypertension; and fatigue. (Id.) On November 20, 2009, Jessica Hall, C-FNP, noted Claimant's reports of knee, shoulder, and back pain. (Tr. at 306.) Examination revealed mild tenderness over the lumbar spine and decreased range of shoulder motion. (Id.) She assessed rotator cuff tear, per Dr. Worthington; arthritis of the knees; and lumbar pain. (Id.)

      ***Dr. Gary Craft, M.D.***:

      On November 16, 2009, Dr. Craft conducted an evaluation at the request of the state agency. (Tr. at 310-16.) Claimant reported a five year history of hypertension controlled by medication, a fifteen year history of dull pain and stiffness of the lower back, a four year history of recurrent popping and stiffness of the bilateral knees, and a several month history of dull and aching left shoulder pain.

(Tr. at 310-11.) Physical exam revealed full range of motion of all upper extremities, with normal strength and grip. (Tr. at 311.) Exam of the back revealed forward bending to 70 degrees. (Tr. at 312.) He was able to squat fair, station and gait were normal, toe and heel walking were normal, and he had full range of motion of the lower extremities, with normal sensation, motor power, and negative straight leg raising testing. (Id.) Dr. Craft opined that Claimant's prognosis for the hypertension was good and for the musculoskeletal system was fair. (Id.)

### Dr. Curtis Withrow, M.D. - Physical RFC Assessment:

On December 1, 2009, Dr. Withrow completed a form RFC assessment on which he opined that Claimant was capable of performing sedentary exertional level work, consisting of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking less than two hours in an eight-hour workday, and performing unlimited pushing and pulling. (Tr. at 317-24.) Dr. Withrow opined that Claimant required work with occasional posturals except that he could never climb ladders, ropes or scaffolds and crawl; must avoid concentrated exposure to extreme temperatures, environmental irritants, and hazards; and must avoid even moderate exposure to vibration. (Tr. at 319-21.)

### Dr. Matthew Nelson, M.D. - Raleigh Orthopedic Associates:

Claimant treated with Dr. Nelson from September 21, 2009, through December 17, 2009, for complaints of left shoulder pain and bilateral knee pain. (Tr. at 325-30.) An MRI of Claimant's left shoulder on September 21, 2009, revealed inflammatory changes of the acromioclavicular joint and that the rotator cuff was intact. (Tr. at 327.) Dr. Nelson noted on December 17, 2009, that Claimant had tenderness over the AC joint of the left shoulder and moderate crepitus of the bilateral knees with full range of motion. (Tr. at 325.) He diagnosed bilateral knee degenerative joint disease and left shoulder impingement for which he administered cortisone shots to the knees and shoulder. (Tr. at 326.) Dr. Nelson recommended physical therapy for shoulder mobilization and strengthening. (Id.)

9

On February 9, 2010, Claimant continued to report left shoulder pain with overhead activities and reported that physical therapy did not help. (Tr. at 368.) Dr. Nelson recommended left shoulder arthroscopy, which he performed on February 19, 2010. (Tr. at 368-70.) On March 4, 2010, Dr. Nelson noted that Claimant was doing well, with no complaints of pain. (Tr. at 371.) On April 15, 2010, Claimant reported right shoulder pain and denied any recent injury. (Tr. at 372.) Dr. Nelson assessed right shoulder impingement, administered a cortisone injection, and advised Claimant to remain active and to begin self-directed physical therapy exercises. (Id.) Claimant reported bilateral knee pain on May 27, 2010, and right shoulder pain on August 26, 2010. (Tr. at 373-74.)

**_Parkview Physical Therapy_**:

Claimant presented for an initial physical therapy session for his left shoulder on December 21, 2009. (Tr. at 331-32.) It was determined that he would attend therapy two times a week for four weeks. (Tr. at 332.) The record however, does not contain any further records regarding Claimant's physical therapy.

**_Dr. James Egnor, M.D. - Physical RFC Assessment_**:

On February 4, 2010, Dr. Egnor completed a form physical RFC assessment on which he opined that Claimant was capable of performing light exertional level work that required occasional posturals and never climbing any ladders, ropes, or scaffolds, and that required an avoidance of concentrated exposure to extreme cold, vibration, and hazards. (Tr. at 342-49.)

**_Dr. Joan Worthington, D.O. - Clinical Assessment of Pain_**:

On April 7, 2010, Dr. Worthington completed a form Assessment of Pain, on which she indicated that Claimant had pain that distracted him from the adequate performance of daily activities and that physical activity greatly increased pain such that would cause him to abandon tasks related to daily activities or work. (Tr. at 351-55.) She further indicated that medication would severely limit his effectiveness in the work place. (Tr. at 351.) She also completed a form Medical Source Statement

10

of Ability to Do Work-Related Activities (Physical), on which she opined that Claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand or walk less than two hours in an eight-hour workday; must alternate sitting and standing to relieve pain or discomfort; and was limited in his ability to push and pull in all extremities. (Tr. at 352-53.) Dr. Worthington noted that Claimant had constant low back pain that radiated to both legs, had decreased left shoulder motion, and had bilateral knee pain. (Tr. at 353.) She further noted the MRI findings as evidence supporting her conclusions. (Id.) She opined that Claimant could occasionally climb and balance but could never kneel, crouch, crawl, or stoop. (Tr. at 353.) She indicated that his ability to reach in all directions was limited and that he was precluded from working around vibrations. (Tr. at 354-55.)

### *Dr. Philip J. Branson, M.D. - Orthopaedic Center of the Virginias*:

Claimant was referred to Dr. Branson by Dr. Kropac on December 21, 2010, for complaints of significant bilateral knee pain. (Tr. at 358-59.) Physical exam revealed no effusion or tenderness and full range of bilateral knee motion. (Tr. at 358.) Dr. Branson assessed right greater than left knee pain without evidence of specific internal derangement. (Tr. at 359.) Based on the physical exam and MRI findings, Dr. Branson opined that arthroscopy would not likely improve his situation. (Id.) He recommended a trial of Synvisc. (Id.) On February 1, 2011, Claimant reported right shoulder pain with a two month history. (Tr. at 360-61.) Dr. Branson noted that Claimant attended three physical therapy sessions and quit due to increased pain. (Tr. at 360.) Dr. Branson diagnosed right shoulder rotator cuff tendonitis and paresthesia of the right hand. (Tr. at 361.) He administered an injection to the right shoulder and recommended physical therapy for range of motion and strengthening. (Id.) Claimant reported continued right shoulder pain on March 2, 2011. (Tr. at 363.) Dr. Branson diagnosed right shoulder rotator cuff tendonitis, failing conservative care measures and ordered an MRI. (Id.)

### *Dr. Mustafa Rahim, M.D.*:

The record reflects Claimant's treatment with Dr. Rahim from December 13, 2006, through

January 14, 2011. (Tr. at 375-418.) In 2006, Claimant complained of lower back pain, right hand and wrist pain, and tiredness and weakness. (Tr. at 377-79.) Dr. Rahim diagnosed symptoms suggestive of lumbar radiculopathy, suspected carpal tunnel syndrome ("CTS"), elevated blood pressure, symptoms suggestive of chronic obstructive pulmonary disease ("COPD"), and heavy tobacco use. (Tr. at 378.) Claimant reported right shoulder pain on January 9, 2007 (Tr. at 382.) and numbness and tingling of the hands on January 26, 2007. (Tr. at 383.) Dr. Rahim diagnosed CTS, moderate on the right and mild on the left. (Tr. at 383.) On July 17, 2007, Dr. Rahim diagnosed exacerbation of COPD and added an inhaler three times a day. (Tr. at 391.) He instructed Claimant to cease smoking. (Id.) Claimant's complaints and diagnoses continued through January 14, 2011. (Tr. at 392-418.)

Claimant's Challenges to the Commissioner's Decision

Neither the Commissioner nor the Claimant filed briefs in this matter, and Claimant's Complaint fails to set forth any specific claims. Similarly, on his form "Request for Review of Hearing Decision/Order," Claimant did not state the bases upon which he requested that the Appeals Council review the ALJ's decision. (Tr. at 12.) The undersigned notes that Claimant was represented by counsel at all levels of review, and was represented by counsel throughout this appeal. As Claimant has not raised any specific arguments at this level of review, the undersigned additionally has reviewed the entire record to see if it comports with the substantial evidence standard.

Analysis.

The ALJ found that Claimant's degenerative disc disease, degenerative joint disease of the knees, left shoulder impingement, rotator cuff on the right, hypertension, and CTS, were severe impairments. (Tr. at 19.) In assessing Claimant's residual functional capacity, the ALJ noted that Claimant's allegation of disabling back, knee, and shoulder pain was not entirely credible in light of the degree of medical treatment required, the findings on examination, and the opinion evidence. (Tr. at 20-26.) The ALJ acknowledged Claimant's testimony regarding his impairments and perceived

limitations. (Tr. at 21.) The ALJ also summarized the medical evidence as outlined above. (Tr. at 21-26.) The ALJ indicated that Claimant's hypertension was under control. (Tr. at 21, 23.) He noted that Claimant's COPD was mild and controlled with medication. (Tr. at 23.) The ALJ noted that although Claimant underwent arthroscopy for his shoulders, the ALJ accounted such fact in his RFC assessment. (Tr. at 24.) Furthermore, a post-operative note indicated that Claimant was doing well respecting his left shoulder and the physical therapy continued on the right as the surgery was only recent. (Id.) Respecting Claimant's back and knee pain, the ALJ noted that treatment had been conservative and surgical intervention was not warranted. (Id.) Regarding his CTS, the ALJ noted that Claimant continued to work despite the diagnosis and condition and recent examinations failed to reveal any functional limitations resulting therefrom. (Id.) The ALJ therefore, limited Claimant to sedentary work, with no climbing ladders, ropes, or scaffolds and exposure to heights, hazards, or dangerous machinery. (Tr. at 20.) He found that Claimant would need to avoid crawling and climbing, but could occasionally bend, stoop, kneel, or crouch and more frequently reach. (Id.) He also indicated that Claimant required breaks of ten to fifteen minutes at two hour intervals and would miss 12 to 17 days a year. (Id.)

In reaching this decision, the ALJ reviewed all the medical evidence of record and explained his assignment of weight to the various opinions. (Tr. at 20-26.) The ALJ acknowledged the opinions of the state agency medical consultants and assigned their opinions some weight as their opinions were consistent with the objective findings and Claimant's treatment history. (Tr. at 24-25.) He also acknowledged Dr. Worthington's opinion and assigned her opinion some weight to the extent that it was supported by his RFC assessment. (Tr. at 25-26.) In assessing the opinion evidence, the ALJ properly considered the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). Accordingly, the undersigned finds that the ALJ properly considered the opinion evidence in accordance with the Regulations and that substantial evidence supports the ALJ's decision

The ALJ additionally thoroughly reviewed all of the medical evidence of record and considered the testimony of Claimant. (Tr. at 20-26.) The ALJ also complied with the applicable Regulations and case law in determining that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment, that Claimant was not entirely credible regarding the severity of his pain and other symptoms, and that Claimant was limited to sedentary work with certain limitations, and could perform a significant number of jobs in the national economy despite his severe impairments.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.),

cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall

be served on opposing parties, District Judge Faber, and this Magistrate Judge.

      The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy

of the same to counsel of record.

      Date: February 28, 2014.

R. Clarke VanDervort
United States Magistrate Judge